FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

97 NOV -4  PM 3: 24

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES OF AMERICA          )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )      CV-95-PT-2275-M
                                  )
NUCOR CORPORATION                 )
                                  )
                                  )      **ENTERED**
        Defendant.                )
                                         NOV 4 – 1997

MEMORANDUM OPINION

I.  BACKGROUND

The United  States of America, through the Environmental

Protection Agency ("EPA") brings this action for civil remedies

against Nucor Corporation for its violations of the Clean Air Act

("ACT") and of the Alabama State Implementation Plan ("Alabama

SIP").  Nucor operates a joist manufacturing plan located in Fort

Payne, Dekalb County, Alabama.  Joists are structural supports

used in construction applications.  The joists are painted on

site.  The paint used consists of certain solvents which when

evaporated in the air are classified as Volatile Organic

Compounds ("VOCs").  VOCs participate in the formation of ozone

and smog and become entrained in the atmosphere when exposed to

open air.  VOCs are released from the open vats of paint used in

1

the dipping process as well as when the joists are drying in the
open air.  The painting process takes place inside the plant.
The air-drying process occurs on large racks or flat bed trucks
outside in an open air yard.

The complaint alleges that Nucor's Vulcraft Division, which
operates the Ft. Payne facility, failed to secure a Prevention of
Significant Deterioration Air Permit (PSD Air Permit) as required
by the Federal Act as well as the Alabama legislation.  The Clean
Air Act requires a "major emitting facility" to secure a PSD Air
Permit before the construction of the facility.  A major emitting
facility is one that will emit over 250 tons of VOCs per year.
The Alabama SIP implements the federal program and is executed by
the Alabama Department of Environmental Management ("ADEM").  The
Government claims Nucor violated the state and federal statutes
by constructing the facility, a clear potential source of air
contaminants, without obtaining the requisite air permit of
either the major source or minor source variety.[1]  The Government
seeks monetary penalties for the alleged period of noncompliance.

The Government has moved for summary judgment, arguing that
there is no genuine issue of material fact that the Vulcraft

---

[1] PSD Air Permits are required whenever a major emitting facility is to be constructed and
operated.  A Synthetic Minor Source Air Permit is required whenever the facility's emissions are
less than 250 tons of VOCs.

2

plant violated the federal and state regulatory statutes.   Nucor
filed cross motions for summary judgment claiming, 1) the statute
of limitations barred the present action; 2) the plant should
never have been characterized as a major emitting source of VOCs
and therefore did not need a PSD Air Permit and could not have
violated the statutes as a matter of law; and 3) even if it is
now accurate to classify the plant as a major source, defendant
was not given fair notice, through the regulations, of its
status, and therefore cannot be penalized without violating its
constitutional guarantee to Due Process.

## II. CONTENTIONS OF THE PARTIES

### A.    Undisputed Facts

Dekalb county has been designated as "in attainment" with
the national ambient air quality standard for ozone.   In such
areas, no "major emitting facility" may be constructed without a
PSD Air Permit, which generally requires application of Best
Available Control Technology (BACT).   PSD preconstruction review
aims to prevent the deterioration of air quality, in regions with
clean air, due to a failure to install the available methods of
controlling contaminated emissions.   A "major emitting facility"
is one that emits 250 tons of any air pollutant per year.
"Fugitive emissions" are not included in that calculation.   The

3

definition and proper interpretation of "fugitive emissions" is the focal point of this dispute.

The new Fort Payne facility commenced operations on March 15, 1987.  Since operations began, the annual emissions far exceeded the minimum of 250 tons per year of VOCs emitted that would classify the facility as a major emitting facility.  A facility with emissions of this level, that does not undergo PSD review and secure a PSD Air Permit, stands in violation of the federal and state regulations.  Vulcraft did not apply for nor secure a PSD Air Permit from ADEM for its Fort Payne plant prior to construction or for several years of subsequent operations.

By at least 1991, Nucor was aware that its VOC emissions exceeded the 250 ton minimum.  Nucor employed a testing laboratory to draft an anonymous application to the ADEM to determine what type, if any, air permit was needed.  Based on the data provided in the application, ADEM responded that the unidentified company would need a PSD Air Permit.  In May of 1992, Nucor hired consultants to perform an environmental audit of the facility.  The results indicated that the plant should have applied for a PSD Air Permit.  On February 11, 1993, ADEM inspected the Nucor facility and determined that Nucor should have obtained a permit prior to construction and operation of the

facility.  On April 8, 1993, ADEM issued a Notice of Violation ("NOV") to the Vulcraft Division for failing to obtain a PSD Air Permit.  On August  27, 1993, the EPA issued an NOV, notifying the company of violations of the Clean Air Act and the Alabama regulations.  Vulcraft secured, from ADEM, a synthetic minor source permit in February, 1994.

## B.    Nucor's Contentions

1.    The Statute of Limitations bars the present action.

Nucor contends that the five year statute of limitations had expired before the Government filed its complaint.  Nucor argues that the five year statute of limitations found in 28 U.S.C. §2462 applies to this type of environmental regulation civil action.[2]  Civil penalty actions brought under section 113 of the Clean Air Act are governed by the five year statute. 42 U.S.C. §113(a)(1) & (a)(1)(C).[3]  Nucor contends that the cause of action

---

[2] Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

[3] Section 113 provides:

> At any time after the expiration of the 30 days following the date on which such notice of a violation is issued, the Administrator may, without regard to the period of violation (subject to section 2462 of Title 28)--

was first created and therefore "accrued" when there was a breach of duty owed to the plaintiff.  In this case that would have been when construction of the facility commenced or when operations began in 1987.  Nucor argues that accrual should be measured from the first date the Government could have brought the cause of action.  Since the claim could have been brought in 1987, the last time the government could have filed a complaint would have been in 1992 at the latest.  Since the present complaint was filed on September 5, 1995, the claim should be barred as a matter of law.

Nucor rejects the Government's suggestion that the discovery rule should apply.  The statute should not start running only from the time the violation was discovered.  Discovery rule applications are largely found in remedial actions.  Since this is a case of pure penalty and punishment, the rule would not be appropriate.  Nucor also adds that there is no Supreme Court or Eleventh Circuit precedent to apply the rule in this type of case.

Nucor rejects the Government's suggestion that a continuing

---

(C) bring a civil action in accordance with subsection [113(b)] of this section.

42 U.S.C. § 113 (a)(1) & (a)(1)(C).

violation theory applies.  Failure to obtain a permit in 1987, prior to construction, Nucor argues, was a one-time occurrence. There is no continuing violation.  In addition, Nucor contends that the theory of continuing violation to toll the statute of limitations applies only in very limited circumstances.  It is seldom seen except where there is some statutory basis for its application.

    2.   Nucor did not need to obtain a PSD Air Permit.

Nucor contends that it is not liable for violations of the Act or the Alabama SIP because it never became a "major emitting facility."  Only "major emitting facilities" must obtain a PSD Air Permit.  Major emitting facilities emit VOCs in excess of 250 tons per year.  According to Nucor, the plant's emissions never exceeded 250 tons per year because most, if not all of the VOCs were fugitive.  The Government may not count fugitive VOCs during its potential to emit calculations.

According to Nucor, fugitive emissions are those which could not be reasonably passed through a stack, chimney, vent or other functionally equivalent openings.  Reasonably collectible emissions are those of a type ordinarily collected by facilities in the industry.  The standard of reasonably collectible should be applied at the time the facility was constructed.  At the time

the Fort Payne plant was built, Nucor asserts, no other joist
plant collected VOCs emitted from similar dip-coating operations.
In addition, emissions from large dip-coating operations are
still not ordinarily collected.  More importantly, it is simply
not technically feasible to attempt to "collect" the VOCs emitted
from the dip-coating process or the drying areas.  The Government
asserts the proper standard is whether contaminants could be
"possibly collected."  If it was possible for a facility to
capture the emissions, they would be rendered non-fugitive.
Application of this standard would nullify the impact of the
rule.  Nucor contends that even emissions which are theoretically
possible to collect would still be considered fugitive if not
ordinarily collected in the industry.  Otherwise, no outdoor
emissions would ever be considered fugitive.

Furthermore, Nucor contends that EPA guidance documents
provide several examples of fugitive emission sources that
describe Nucor's process.  The EPA posted a document on its
Technology Transfer Network that defines fugitive emissions and
cites 14 examples of sources of these emissions, four of which
are sources at the Fort Wayne facility.  They are, "Open process
or storage tanks," "Open-top product/aggregate storage
bins/silos," "Open product storage piles," and "Haul roads."
Nucor contends that the only places where VOC emissions originate

8

at this plant fit into one of these four categories of "fugitive sources." The dip tank is an "open process tank" and "open-top product storage bin." The drying joists sit in "open product storage piles," waiting for loading, and the joists are loaded onto trucks and hauled out of the facility on a "haul road." Nucor argues that since all of the processes guilty of emitting VOCs conform with examples of fugitive sources, the levels of non-fugitive emissions could not possibly qualify the plant as a major emitting facility.

Nucor also argues that the PSD program is only supposed to be triggered when a major stationary source or major modification is physically changed, and that it is only at that time when an evaluation of VOC emissions is to be conducted. That is the only appropriate time to assess whether emissions are fugitive or not. Since the governments' investigations commenced several years after the last major modification, the EPA is now executing an impermissible reevaluation of the Vulcraft facility.

Nucor argues that fugitive emissions need not be "quantifiable" as the Government asserts, in order for them to be discounted in the emissions calculations. Nucor contends that the proper reading of the Alabama regulation is that unquantifiable fugitives are ignored in the analysis of the

9

magnitude of the source.  These emissions are not used to qualify
a new source as major and are irrelevant to source review
requirements.  Moreover, Nucor maintains it has never conceded
that its emissions were properly considered non-fugitive or point
source.  In devising its permit applications in 1993 and 1994,
Vulcraft did not characterize its emissions as coming from a
single source.

    Finally, Nucor contends that the Government cannot now
allege that Nucor is guilty for failing to obtain a minor source
permit upon construction because it was never mentioned in the
complaint.   The only alleged violation of the federal and state
schemes dealt with the failure to obtain a PSD Air Permit.  A new
claim at this juncture should not be considered by the court.

    3.  Nucor was not afforded fair notice of the proper
interpretation of fugitive.

    Even if Vulcraft was obligated to secure a PSD permit before
constructing the Fort Payne plant, Nucor contends that it cannot
be penalized since it never received fair notice of the status of
its emissions.  The guarantees of the Due Process Clause of the
United States Constitution require a statute or regulation to
provide adequate warning of what it commands and forbids.  Nucor
claims that the language describing fugitive emissions is so

unclear as to fail to adequately warn companies like Vulcraft of
its obligations.  As Vulcraft could not be expected to know how
to proceed based on the regulations, Nucor cannot now be punished
for failing to act in a way retroactively ordained by the
Government and the court.

Nucor further contends that due process guarantees govern
Vulcraft's operations and apply to the interpretation and
enforcement of the EPA regulations.  A private party cannot be
penalized without first being provided adequate notice of the
substance of the rule.  Even though an agency interpretation of
the rule may be permissible, if it is far from that of a
reasonable person's understanding, it cannot be said to provide
"fair notice."

Nucor contends that there is substantial confusion over
whether fugitive emissions are those that would not **"ordinarily
be collected"** through stacks, chimneys, etc. or which **"could not
reasonably"** pass through a stack chimney, etc.  Members of the
regulatory community disagree over what is reasonable and whether
that requires an analysis of what is ordinarily done.  If one
other facility collects these VOC emissions from an outside
source, is it rendered reasonable for all facilities similarly
situated to do so?  The regulation offers no guidance on how to

11

account for comparisons of vastly different facilities.  The
regulations fail to inform Nucor with ascertainable certainty
which emissions are fugitive.  As a result of this type of
confusion and the agencies' failure to elaborate and guide the
industry, Nucor contends that it could not possibly have had fair
notice of an interpretation that renders its facility a major
emitting source.

If the court chooses to adhere to the current interpretation
of fugitive emissions and concludes that applying that
interpretation in 1987 would have required Nucor to obtain a PSD
Air Permit, Nucor must not be assessed penalties at this time
because of its rights under the Due Process Clause.  Absent
constitutionally adequate notice, the facility cannot be
penalized.  Nucor concludes that the Government is entitled to no
penalty for Vulcraft's alleged failure to obtain a PSD permit for
its Fort Payne facility.

## C. Plaintiff Government's Contentions

The Government contends that Nucor violated the Alabama SIP
and Clean Air Act when it constructed and operated its Fort Payne
joist plant without securing a PSD or minor source permit.  The
plant was a major emitting facility, producing over 250 tons of
VOCs per year and was therefore required by the state and federal

regulations to conduct PSD review and obtain a PSD Air Permit.
Its failure to do so amounts to a violation of Alabama law and
entitles the federal government to seek monetary penalties in an
enforcement action.

　　1.　The Nucor plant was required to have a PSD permit.

　　The Government contends that Nucor violated the federal and
state statutes upon construction and operation of the Fort Payne
plant without first obtaining a PSD permit.　The plant's VOC
emissions qualifies it as a major emitting facility.　Nucor's
submission to ADEM in April, 1993 reflected actual levels of
emissions between 475 and 692 tons per year between 1988 and
1992.　In that same year, ADEM issued an NOV concluding the site
was a major source subject to PSD review.[4]

　　a.　The plant's emissions were not fugitive.

　　Contrary to Nucor's claims, the VOC emissions from the plant
were not fugitive.　The Government argues that fugitive
emissions, as defined by the Government, are those that could not
reasonably pass through a stack, chimney, etc.　The
interpretation of this definition of fugitive emissions

_____

　　[4] The Government contends that once the NOV was issued, Nucor bore the burden of
showing it was not subject to PSD requirements. By failing to meet this burden, the government
argues, Nucor is liable as a matter of law.

propounded by Nucor does not apply in this case.[5]  The Government
contends that the Alabama law governs.  The EPA approved
Alabama's SIP.  Therefore, the SIP governs the present case.  The
Alabama definitions of "major emitting facility" and "fugitive
emissions" apply.  EPA model PSD regulations and statutory
preambles are not binding authority when the Alabama regulations
address the issue in question.

Fugitive emissions are those that "could not reasonably pass
through a stack, chimney, etc."  Nucor argues the proper
definition classifies emissions that are not "ordinarily
collected" as fugitive.  The Government rejects this definition
as it is not grounded on binding authority.  Nucor's reliance on
the preamble to the EPA model regulations and EPA memoranda
dealing with landfills and open coal piles is misplaced and fails
to meet Nucor's burden of proof that the statutory exemption for
fugitive emissions applies here.  The appropriate definition is
the "reasonably collected" standard and its interpretation in no
way relies upon what is ordinarily done in the industry.

None of the emissions from the Fort Payne plant meet the
definition of fugitive.  A sizable percentage of the emissions

---

[5] Nucor argues above that reasonably collectible implies looking to the industry to discern
whether these are a type **ordinarily collected** by other facilities.

14

already pass through vents and openings in the manufacturing
building.   The Government suggests that Nucor concedes this.[6]
Since those emissions are reasonably captured they are non-
fugitive.   Those emissions that arise from the open-air drying
area are not fugitive for two reasons.   First, these open air
emissions could reasonably be captured if the proper equipment
and technology were to be utilized.   Nucor could have reasonably
constructed the drying facility with a venting process for the
fumes.   Second, Alabama law requires the source to quantify the
fugitive emissions and apply the figure to its calculation of
potential emissions.   Nucor claims that all of the emissions are
fugitive.   The Government contends that since the building
emissions are captured by the vents, this statement is untrue and
that none of the emissions should be considered fugitive.   The
Government argues that it is undisputed that those emissions from
the drying process are not quantifiable and that as a result,
they cannot be exempt when calculating potential to emit from the
entire site.

> b. Sufficient "non-fugitive" emissions exist to require
> a PSD Air Permit.

Even if the court disagrees with classifying the open drying

---

[6] The Government points to permit applications, filed by Nucor in 1993 and 1994, where
they describe the venting process over the joist bays. See Gov. Original Summary Judgment Brief
at 24.

15

emissions as non-fugitive, or considers the unquantifiable VOCs
in the calculation, if the building alone emits more than 250
tons of VOCs per year, Nucor was still bound to conduct a PSD
review and secure a major emitting facility permit. Even if some
of the VOC emissions were fugitive, there would still have been
ample tonnage of non-fugitive contaminants to qualify the source
as a major emitting facility. Based on the annual emission
figures, if only 16% of Nucor's emissions passed through the
vents, rendering them non-fugitive, the plant would still qualify
as a major source.

2. Nucor had ample notification of its position.

In response to any claims made by Nucor that it was not
aware it needed a permit in 1987, the Government argues ignorance
of the law is no excuse, especially when the law is not
ambiguous. The Alabama SIP rule on fugitive emissions was clear
to the ordinary person. One does not gain free rein to violate
the law by claiming ignorance or mistaken understanding of the
law. The Government contends that this rule was not so
uncomprehensible to the ordinary person as to amount to
unconstitutional vagueness. After due inquiry, a person of
ordinary intelligence would have had fair warning of a potential
violation. Any misunderstanding could have been clarified
through reasonable investigation. Legal research or requests for

16

clarification from the regulatory agency would have quickly solved any confusion.  The law is not vague.  No violation of due process occurred.

Any facility having a potential source of air contamination must obtain an Air Permit before construction and operation of the source.  Nucor could have reasonably concluded that it was a source and that it emitted a contaminant.  Nucor also could have contacted ADEM and found out the procedures it had to follow and how best to proceed had it exerted minimal effort.

The Government contends that Nucor had actual notice that its conduct was at risk.  General manager James Campbell testified that he had a conversation with another joist plant manager who had just paid a penalty for failing to have a permit in connection with VOC emissions from painting.  Campbell then enlisted TTL to pose a hypothetical to ADEM with the actual data from the Fort Payne plant to determine what permit would be necessary.  The Government contends that the plant knew it needed a permit in 1993 when the ADEM hypothetical report came back. The plant knew as early as 1991 that it was in violation. Campbell wrote a letter to ADEM stating he knew of the violation for VOC emissions in late 1991.  Realizing that its conduct was at risk, Nucor cannot assert a lack of fair notice claim and due

process protections to absolve it from penalties.

3. Even if the plant was not major source, Nucor still
needed to obtain a synthetic minor source air permit.

Assuming Nucor could not be sure that a full PSD review and
permit were needed at the time, Nucor should have known that the
Alabama SIP requires any potential source of air contaminant to
obtain an air permit before construction.  This failure is but
another state law violation for which the federal government may
obtain penalties.  The Government claims that since the complaint
alleged that Nucor needed a PSD Air Permit, this included the
allegation that Nucor needed a minor source air permit.  In any
event, a complaint need only give the defendant notice of the
occurrence at issue without necessarily detailing all legal
theories.  The government contends Nucor had notice of the
Government's position.

4. The present action is not barred by the statute of
limitations.

a. Separate violations.

Contrary to Nucor's contention that the applicable five year
statute of limitations bars the present action, the Government
argues that constructing and then operating the plant without an

air permit qualifies as multiple violations.  The violations
which comprise the basis of this action encompass more than just
a failure to obtain the permit before construction.  Each day the
plant operated its facility without a permit amounts to another
separate violation.

### b. Continuing violation theory.

In the alternative, the Government contends, the court
should apply the continuing violation doctrine to this case.  The
initial violation of not securing a permit before construction
and the subsequent operation of the plant without a permit up
until 1993 creates a string of related violations that the court
should consider as one violation and use an accrual date within
the five year statute of limitations.  The Government suggests
that the court consider the claim not to have accrued until the
string of violations was complete.  In that case, the complaint
was filed well within the five year statute of limitations.

### c. The Discovery Rule applies.

In addition, the Government contends that accrual of the
claim should only occur when the government first knew or should
have known of the violations.  The Government, state or federal,
was at a distinct disadvantage in trying to "discover" Nucor's
violations.  The whole purpose in having new projects apply to

19

ADEM for an air permit is to review the contamination potential
and determine what violations are likely and what permits are
necessary.  By not submitting its facilities for review, Nucor
made it virtually impossible for either government to "discover"
the violation.  The Government contends that because of Nucor's
violation of the law, not applying for a preconstruction permit,
ADEM was deprived of the information necessary to assess the
plant's environmental impact.  Only by happenstance, in 1993, was
the ADEM able to learn of Nucor's violations.  This court's
refusal to apply the discovery rule would encourage violators to
avoid the costly process of applying for a permit and take their
chances of going undetected for five years.  Once the time ran
out, they would be protected by the statute if courts did not
apply the discovery rule.

    5. Nucor has submitted no admissible evidence.

In both filing and responding to the summary judgment
motions before the court, the Government contends, Nucor has
failed to submit evidence admissible during the consideration of
a motion for summary judgment.  Nucor offers only unsworn expert
reports and opinion letters.  It has offered no affidavits,
declarations or other sworn testimony that would properly
substantiate its claims.  Further, the Government argues, some of
the unsworn statements offer no basis in personal knowledge on

which to advance the opinions and conclusions.   Therefore, the
Government maintains the facts it has offered in support of its
motion and in refutation of Nucor's motion are undisputed.

After considering the contentions of the parties and the
evidence applicable thereto, the court is satisfied that summary
judgment is inappropriate.   All motion for summary judgment will
be DENIED.

DONE and ORDERED this 31st day of October 1997

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE