FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 OCT 16 AM 11: 03

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 95-PT-2275-M |
| | ) | |
| NUCOR CORPORATION, | ) | ENTERED |
| | ) | |
| Defendant. | ) | OCT 16 1998 |

===

Memorandum Opinion

===

This cause comes on to be heard on a Motion to Amend the Judgment, for Judgment as a Matter of Law or for a New Trial filed by the plaintiff, the United States of America, on August 7, 1998. In its motion, the Government seeks to have this court amend its Findings of Fact and Conclusions of Law entered on July 6, 1998 or, in the alternative, enter judgment for the United States or order a new trial. The plaintiff presents six grounds for its motion: First, the Government argues, the court's conclusion that the Fort Payne facility of the defendant, Nucor Corporation ("Nucor"), was not a major stationary source of volatile organic compounds is in error, because no reasonable trier of fact could find that a considerable amount of the emissions at the facility were fugitive. Second, the Government argues that the court misconstrued the definition of fugitive emissions given in the Alabama state implementation plan and, consequently, that the court misinstructed the jury on the issue of fugitive emissions.[1] Third, the Government argues that under the Alabama state implementation plan, the burden of proof was on Nucor to demonstrate that it had sufficient fugitive emissions to exempt it from undergoing prevention of significant deterioration review prior to permitting of the facility. The Government next argues that the Seventh Amendment does not entitle Nucor

---

[1] It would appear that the plaintiff now attempts to raise an issue not presented at trial as to the jury instructions.

*1*

to a jury trial on the issue of whether it was a major stationary source because that determination was only an issue relating to the amount of the penalty, an equitable matter. Fifth, the Government argues that Nucor's closing argument that the definition of "fugitive emissions" is vague and that the jury should "just say 'no' to the federal government" was prejudicial. Finally, the Government argues that the court erred in not permitting it to place certain documents in evidence.

On a renewed motion for judgment as a matter of law, the party opposing the verdict must demonstrate that, in light of the evidence presented at trial, read most favorably to the non-moving party, "reasonable people could not have reached the verdict in question." Overseas Private Investment Corp. v. Metropolitan Dade County, 47 F.3d 1111, 1113 (11th Cir. 1995); Miles v. Tennessee River Pulp and Paper Co., 862 F.2d 1525, 1528 (11th Cir. 1989). See also, WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2524 (quoting Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir. 1970), for the proposition that a Rule 50(c) motion is properly granted when "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached").

Federal Rule of Civil Procedure 59(a) states that a new trial can be granted "for any of the reasons for which new trials have heretofore be granted in actions at law in the courts of the United States." The decision to grant a motion for new trial pursuant to Rule 59(a) is left, however, to the discretion of the court. Burger King Corp. v. Mason, 710 F.2d 1480, 1486 (11th Cir. 1983); Miller v. Tennessee Gas Transmission Company, 220 F.2d 434, 436 (5th Cir. 1955). The decision to grant a new trial

> is indeed an exercise of discretion full of delicacy and difficulty. But if it should clearly appear that the jury have committed a gross error, or have acted from improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case.

Blunt v. Little, 3 F. Cas. 760, 761-62 (C.C. Mass. 1822) (J. Story). "The motion for a new trial may invoke the discretion of the court in so far [sic] as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). Where a ground for new trial was previously advanced at trial, the court may grant the motion for new trial only if the error was not harmless within the meaning of Federal Rule of Civil Procedure 61. See Hannah v. Haskins, 612 F.2d 373, 376 (8th Cir. 1979); WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2805 ("The importance of Rule 61 in its application to motions for a new trial cannot be overlooked.") Where no objection was made at trial or where a new theory is advanced by the movant, a new trial will be granted only where plain error exists. Pate v. Seaboard R.R., Inc., 819 F.2d 1074, 1083 (11th Cir. 1987).

Federal Rule of Civil Procedure 59(e) "was adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." White v. New Hampshire Department of Employment Security, 455 U.S. 445, 450 (1982) (citing Notes of Advisory Committee on 1946 Amendment to Rules, 28 U.S.C., p. 491) (emphasis added). "A court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." In the Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996); Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (adding "change in controlling law" to the litany of grounds for amendment under Rule 59(e)). The mere existence of "a mistake is not, by itself, enough to warrant granting" a Rule 59(e) motion; "relief . . . is generally available only when a manifest error affects the 'correctness of judgment' . . . " Norman v. Arkansas Department of Education, 79 F.3d 748, 750 (8th Cir. 1996). It is within the court's discretion to refuse to entertain any claim raised for the first time after entry of judgment. Seamon v. Vaughan, 921 F.2d 1217, 1220 (11th Cir. 1991).

## Facts[2]

The defendant operates a facility manufacturing and painting steel joists in Fort Payne, Alabama. At this facility, the joists, after being welded, are dipped into long, narrow vats of grey or red paint, pulled forth, and set out to dry. The paint used at the times relevant to this suit was a low-solid paint. Because of its constitution, the solids in the paint must continually be mixed with a thinner in order that the surface of the joists can be coated. The thinner rapidly evaporates, precipitating the drying process. Since the thinner continuously evaporates from the paint vats, it must continually be added to keep the solids in the paint from becoming an unusable sludge. Being a volatile organic compound (also known as an organic solvent) the thinner evaporating out of the vats of paint and off the drying joists is distributed into the local atmosphere where it adds to the concentration of low-level ozone.[3]

In June 1986, the defendant moved its operations from one compound in Fort Payne to another approximately ten miles away. From the time of the construction of the new Fort Payne plant until February 22, 1994, the defendant operated its facility without an air permit. The Environmental Protection Agency brought the instant action to collect fines from Nucor for the period in which it operated the Fort Payne plant

---

[2] The facts are developed here in the light most favorable to the non-movant from the evidence presented at trial.

[3] In the presence of sunlight, volatile organic compounds react with nitrogen oxides in the lower atmosphere to create ground level ozone, also known as smog.

3

without a permit.

The issue that was finally tried on June 22-24, 1998, did not concern whether Nucor had failed to obtain a permit as required under the state implementation plan or whether Nucor's Fort Payne facility emitted volatile organic compounds, but, instead, whether the amount of volatile organic compounds the facility emitted required it to be classified as a major stationary source. Under the Clean Air Act and the state implementation plan incorporated into the Alabama Administrative Code, the permitting requirements for the defendant if the Fort Payne facility could potentially have produced more than 250 tons of countable organic solvents were different than if its potential emissions were less than that amount.[4] At trial, apparently, there existed no dispute that the total amount of volatile organic compounds that potentially could have escaped from the Fort Payne facility in a year was between 1300 and 1600 tons. However, certain of those emissions were arguably fugitive and not properly calculated in the total amount of volatile organic compounds emitted for purposes of deciding whether the facility had to undergo a prevention of significant deteriorization review. It was on this fugitive or non-fugitive emissions issue that the trial centered. In rendering its verdict against the Government, the jury therefore determined that a sufficient amount of emissions were fugitive to bring the countable amount of emissions under 250 tons.

## Contentions & Analysis

The court will primarily address the issue of whether defendant was entitled to a jury trial. Whether a jury trial was required or not determines the character of the instant motion — i.e., whether it can be treated, at least in part, as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). As such, it is to this issue that the court first attends.

The Seventh Amendment requires a jury trial only in matters arising at common law where the matter in controversy exceeds twenty dollars.

> Since Justice Story's time the Court has understood "Suits at common law" to refer "not merely [to] suits, which the common law recognized among its old and settled proceedings, but [to] suits in which legal rights were to ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Parsons v. Bedford, 3 Pet. 433, 447 [] (1830) (emphasis in original). The seventh Amendment thus applies not only to common-law causes of action, but also to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18[th] century, as opposed to those customarily heard by courts of equity or admiralty." Granfinanciera, S.A. v. Nordburg, 492 U.S. 33, 42 [] (1989) (citing Curtis v. Loether, 415 U.S., at 193 []). To determine whether a statutory action is more analogous to cases tried in courts of law than to suits

---

[4] If greater than 250 tons of countable volatile organic compounds were potentially emitted within a given year, the defendant was required to undergo a prevention of significant deteriorization review.

tried in courts of equity or admiralty, we examine both the nature of the statutory action and the
remedy sought.  See 492 U.S., at 42 [].

Feltner v. Columbia Pictures Television, Inc., — U.S. —, —, 118 S.Ct. 1279, 1284 (1998).  In Tull v. United
States, 481 U.S. 412 (1987), the Supreme Court held, in reference to the Clean Water Act, that the issue of
liability in an action for civil penalties is an action at law permitting a trial by jury and that determination of
the penalty to be imposed under the Act is akin to consideration of punitive and equitable award for which no
jury trial is required.  Although the court has found no cases specifically on point with respect to the
applicability of Tull's holding to the Clean Air Act, the plaintiff has not, in the instant motion, advanced any
genuine reason why the issues of liability and penalty should not be similarly divided.  However, the parties
dispute whether the issue of the defendant's status as a major statutory source is a liability or penalty issue
and, therefore, whether the defendant was entitled to a jury trial on that issue.

        The Government contends that the issue of whether Nucor was a major statutory source (the issue at
trial) was relevant only as a penalty issue because, even if the Fort Payne facility was not found to have been a
major stationary source at trial, Nucor would nonetheless be liable for fines for failure to obtain a permit.
The determination that Nucor was a major stationary source required to undergo a prevention of significant
deteriorization review prior to receiving an air permit, the Government argues, would only affect the amount
of penalty that the defendant owes for its failure to obtain that permit.

        The Clean Air Act, 42 U.S.C. § 7401, et seq., grew out of attempts in the 1950's and 1960's to address
deepening concerns about deteriorating air quality in many regions of the United States.  See Train v.
National Resource Defense Council, Inc., 421 U.S. 60, 63-64 (1975).  While early attempts at regulation
placed the onus of developing air quality standards on the States, in the Clean Air Amendments of 1970
"Congress . . . [took] a stick to the States," giving the Environmental Protection Agency ("EPA") the
authority to develop national ambient air quality standards with which the States were required to comply.
Id. at 64-65.

        National ambient air quality standards were designed to be comprehensive and uniform across all
States.  These standards were comprised of two parts: a primary ambient air quality standard necessary to
protect the public health and a secondary ambient air quality standard "requisite to protect the public welfare
from any known or anticipated adverse effects associated with the presence of such air pollutant in the
ambient air."  42 U.S.C. § 7409(b).  In the Clean Air Amendments of 1970, the Administrator of the EPA was
given thirty days from the Amendments' passage in which to promulgate national ambient air quality
standards for pollutants on which air quality criteria had already been issued, including photochemical

oxidants — ozone and its precursors.[5]  Union Electric Company v. Environmental Protection Agency, 427 U.S. 246, 249-50 (1976).  Upon promulgation of an air quality standard for a particular pollutant, each designated region is determined to be either, one, nonattainment, in violation of the air quality standard in that region or in contribution to the violation of the air quality standard in another region; two, attainment, in compliance with the air quality standards for the region; or, three, unclassifiable.  See 42 U.S.C. § 7407.  DeKalb County, the designated region in which Nucor's Fort Payne facility operates, was determined to be in attainment for ozone on May 27, 1982.  See Alabama Administrative Code § 335-3, Appendix E.

> The heart of the Amendments is the requirement that each State formulate, subject to EPA approval, an implementation plan designed to achieve national primary ambient air quality standards those necessary to protect the public health "as expeditiously as practicable but . . . in no case later than three years from the date of approval of such plan." § 110(a)(2)(A) of the Clean Air Act, as added, 84 Stat. 1680, 42 U.S.C. § 1857c-5(a)(2)(A). The plan must also provide for the attainment of national secondary ambient air quality standards those necessary to protect the public welfare within a "reasonable time." Ibid.  Each State is given wide discretion in formulating its plan, and the Act provides that the Administrator "shall approve" the proposed plan if it has been adopted after public notice and hearing and if it meets eight specified criteria. § 110(a)(2).

Union Electric Co. v. Environmental Protection Agency, 427 U.S. at 249-50. Also see, Clean Air Implementation Project v. Environmental Protection Agency, 150 F.3d 1200, 1202 (D.C. Cir. 1998).

Under the Alabama state implementation plan in effect at the time the defendant began construction of its new Fort Payne facility, "[a]ny person building, erecting, altering, or replacing any article, machine, equipment, or other contrivance, the use of which may cause the issuance of or an increase in the issuance of air contaminants . . . , shall first obtain authorization for such construction from the Director [of the Alabama Department of Environmental Quality] in the form of an Air Permit."  Alabama State Implementation Plan § 16.1.1(a) (1985), revised, Alabama Administrative Code § 335-3-14-.01(1)(a) (1995).  Incident to the grant of an air permit, certain major stationary sources being constructed in "Clean Air Areas" — those areas designated in attainment of the national ambient air quality standards for a particular pollutant — were required to undertake what is referred to generally as a prevention of significant deterioration review.  The purpose of such review is to prevent the degradation of air quality to non-attainment levels by the construction or modification of new sources of pollutants in areas that are in attainment or are non-classifiable.

While many facilities with the potential to emit over 250 tons of pollutants are required to undergo prevention of significant deterioration review prior to receiving a permit, regardless of how any pollutants are exuded from the facility, the prevention of significant deterioration review requirement does "not apply to a major secondary source" if the source does not belong to an enumerated category and "[t]he source or

---

[5]  The other five pollutants were particulate matter, sulfur oxides, carbon monoxide, nitrogen oxides, and hydrocarbons.

modification would be a major stationary source . . . only if <u>fugitive emissions, to the extent quantifiable,</u> are considered in calculating the potential to emit of the stationary source. . . ." Alabama State Implementation Plan, § 16.4.8(d)(7) (1985), <u>revised,</u> Alabama Administrative Code § 335-3-14-.04(8)(d)7 (1995) (emphasis added). The Government argues that Nucor failed to adhere to the Alabama state implementation plan when it failed to obtain a permit, with the prevention of significant deteriorization review being a prerequisite to obtaining that permit. Apparently, for the defendants, two potential fonts of liability against it exist — the failure to obtain a permit and the failure to undergo a prevention of significant deteriorization review — both of which require resolution by a jury trial.

The court first notes that the Government brought suit against Nucor under §§ 113(a)(1)(C) & (b)(1) of the Clean Air Act, 42 U.S.C. §§ 7413 (a)(1)(C) & (b)(1), which state:

> [(a)(1)] Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit, the Administrator shall notify the person and the State in which the plan applies of such finding. At any time after the expiration of 30 days following the date on which such notice of a violation is issued, the Administrator may, without regard to the period of violation (subject to section 2462 of Title 28)--
> . . . (C) bring a civil action in accordance with subsection (b) of this section.
> * * *
> [(b)] The Administrator shall, as appropriate, in the case of any person that is the owner or operator of an affected source, a major emitting facility, or a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day <u>for each violation,</u> or both, in any of the following instances:
> > (1) Whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit. Such an action shall be commenced (A) during any period of federally assumed enforcement, or (B) more than 30 days following the date of the Administrator's notification under subsection (a)(1) of this section that such person has violated, or is in violation of, such requirement or prohibition. . . .

The statutory language is clear — penalties of up to $25,000.00 per day can be assessed for <u>each</u> violation of the state implementation plan. The failure to procure a permit under § 16.1.1(a) and the failure to undergo prevention of significant deterioration review each counts as a separate violation. The major stationary source issue is a liability issue because failure to undergo a prevention of significant deterioration review subjects the defendant to a separate penalty.

The court concludes that the determination of whether Nucor's Fort Payne facility was a major stationary source is relevant both to the legal question of liability in this case and any equitable penalty issue. The issue of whether the Fort Payne facility was a major stationary source was appropriate for resolution by a jury.

For the reasons stated in the Findings of Fact and Conclusions of Law filed on July 6, 1998, the court will deny the other grounds of the subject motion.

DONE and ORDERED this ___ day of October 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE